1  AARON M. CLEFTON, Esq.  (SBN 318680)
   REIN & CLEFTON, Attorneys at Law
2  1423 Broadway #1133
   Oakland, CA  94612
3  Telephone:  510/832-5001
   Facsimile:  510/832-4787
4  info@reincleftonlaw.com

5  Attorneys for Plaintiff
   JOSH RICHEY

6

7                  UNITED STATES DISTRICT COURT

8                  EASTERN DISTRICT OF CALIFORNIA

9

10  JOSH RICHEY                          CASE NO.
                                         Civil Rights
11          Plaintiff,
                                         COMPLAINT FOR PRELIMINARY AND
12                                       PERMANENT INJUNCTIVE RELIEF AND
                                         DAMAGES:
13     v.
                                         1.  Violations of Americans with Disabilities Act
14                                           of 1990 (42 U.S.C. § 12101 *et seq.*)

15  FENOZ LLC dba BIG PINES              2.  Violation of the California Unruh Act (Cal.
    MOUNTAIN HOUSE OF TAHOE                  Civil Code §§ 51 and 52)
16
                                         3.  Violation of the California Disabled Persons
17          Defendant.                       Act (Cal. Civil Code § 54 *et seq.*)

18                                       DEMAND FOR JURY TRIAL

19

20          Plaintiff JOSH RICHEY complains of Defendant FENOZ LLC dba BIG PINES

21  MOUNTAIN HOUSE OF TAHOE and alleges as follows:

22          1.      **INTRODUCTION:**  Plaintiff is a disabled veteran who uses a service dog to

23  ameliorate the effects of his psychiatric disability, bipolar disorder. In late February, he planned a

24  trip to Lake Tahoe to go snowboarding with a friend.  Prior to the trip, Plaintiff made a

25  reservation to stay at the Big Pines Mountain House of Tahoe located at 4083 Cedar Ave, South

26  Lake Tahoe, California, for the night of February 29, 2024.  Plaintiff had stayed at this location

27  previously.  He made the reservation through a third-party travel website.  On February 29, 2024,

28  Plaintiff and his service dog, Harley, drove from his home in the Bay Area to South Lake Tahoe.

                                         1

1   When Plaintiff arrived at the Big Pines Mountain House, he parked his vehicle and went inside

2   the office to check in. As is his usual practice, he was accompanied by Harley. Harley was

3   wearing a vest which identified him as a service dog.

4        2.   Plaintiff approached the check-in area, and he informed Defendant's employee in

5   the office that he had a reservation and would like to check in. Defendant's employee informed

6   Plaintiff that the Big Pines Mountain House had a new policy, and he would have to show an ID

7   proving that his dog is in fact a service dog in order to stay at the motel without being charged a

8   pet cleaning fee.  Plaintiff asked why Defendant had changed their policy.  He explained that he

9   had stayed at the motel many times with Harley without any issue.  Defendant's employee

10  reiterated that Defendant had changed their policy and now require all service dog handlers to

11  provide proof that their dog is a service dog.  Plaintiff explained to Defendant's employee that

12  there is no such thing as an ID or paperwork which proves that a dog is a service dog because

13  neither the ADA nor state access laws require such paperwork.  Defendant's employee and

14  Plaintiff had a lengthy discussion about the legality of such a requirement, and ultimately,

15  Plaintiff requested that Defendant's employee call her manager.

16       3.   Defendant's employee called the manager/owner as Plaintiff requested, and she

17  told her boss the Plaintiff refused to provide an ID for his service dog.  Defendant's

18  manager/owner told the employee that she should make a one-time exception to the policy of

19  requiring IDs for service dogs for Plaintiff.  Defendant's employee hung up the phone, completed

20  the check-in process with Plaintiff and provided him with the key to his room. Plaintiff was in his

21  room for only a few minutes when he determined that he was too upset about Defendant's illegal

22  policy and Defendant's treatment of him to stay at the Big Pines Mountain House.  He left the

23  room, returned to the lobby, and requested a refund of the money he had paid for the room.

24  Defendant refused to refund the money because he had booked the room through a third-party

25  website, even after being asked to do so by the travel agent with whom Plaintiff booked the room

26  and the South Lake Tahoe Police.

27       4.   Although Defendant's begrudgingly allowed Plaintiff a one-time reprieve from its

28  noncompliant service dog policy, Plaintiff had to essentially force his way into the motel, which

1    many disabled service-dog users would not do. Further, Plaintiff's experience of being treated

2    very poorly and essentially having to force Defendant's to provide him even minimal service left

3    him emotionally drained and upset.  He does not want to experience the same treatment the next

4    time he visits, so he is deterred from returning to the Big Pines Mountain House until Defendant

5    adopts an ADA compliant service dog policy.  Further, Defendant constructively denied Plaintiff

6    lodging at its hotel because he is disabled and needs the assistance of a service animal for certain

7    tasks.  Plaintiff left to try to find another accommodation which would not require an "ID" for his

8    service dog.

9            5.      The Defendant's decision to exclude service dogs contravenes the Department of

10   Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part,

11   the guidance states:

12   •    A person with a disability cannot be asked to remove his service animal from the

13        premises unless: (1) the dog is out of control and the handler does not take

14        effective action to control it or (2) the dog is not housebroken. When there is a

15        legitimate reason to ask that a service animal be removed, staff must offer the

16        person with the disability the opportunity to obtain goods or services without the

17        animal's presence**.**

18   DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-

19   animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these

20   requirements specifically in the hotel context:

21   **Q17. Does the ADA require that service animals be certified as service**

22   **animals**?

23   A. No. Covered entities may not require documentation, such as proof that the

24   animal has been certified, trained, or licensed as a service animal, as a condition for

25   entry.

26   **There are individuals and organizations that sell service animal certification**

27   **or registration documents online. These documents do not convey any rights**

28   **under the ADA and the Department of Justice does not recognize them as**

1    **proof that the dog is a service animal.**

2    https://www.ada.gov/resources/service-animals-faqs/

3    6.    Plaintiff loves to snowboard.  It is an activity that calms him and helps him

4    regulate his disability. Plaintiff often snowboards in the Tahoe area, and when he does, he likes to

5    stay in hotels that are nearby. Big Pines Mountain House in South Lake Tahoe is very

6    conveniently located for Plaintiff when he snowboards at Heavenly.  Plaintiff intends to return to

7    the motel in the future but cannot do so until the policies of the motel are made accessible to

8    disabled individuals who use service dogs, including revision of its service dog policies and

9    necessary employee training and/or re-training.  Plaintiff has brought this lawsuit to force

10   Defendant to change its discriminatory and illegal policies and compensate him for initially

11   refusing to allow him to stay at the motel because Plaintiff is a disabled person who needs the

12   assistance of his qualified service dog and its poor treatment of Plaintiff.  Plaintiff seeks an

13   injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a

14   qualified service dog at the Big Pines Mountain House.

15   7.    **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC

16   sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law

17   pursuant to 28 U.S.C. § 1367.

18   8.    **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is

19   proper because the real property which is the subject of this action is located in this district and

20   that Plaintiff's causes of action arose in this district.

21   9.    **INTRADISTRICT:**  This case should be assigned to the Sacramento intradistrict

22   because the real property which is the subject of this action is located in this intradistrict and

23   Plaintiff's causes of action arose in this intradistrict.

24   10.   **PARTIES:**  Plaintiff Josh Richey is a "qualified" disabled person who uses the

25   assistance of a service dog to assist him with certain tasks that ameliorate his disability.  He

26   suffers from bipolar I disorder which causes Plaintiff to experience, in its unmitigated state, poor

27   sleep, hallucinations, paranoia, singular and ruminating thinking, difficulty focusing, and

28   difficulty maintaining health hygiene. Plaintiff's disability substantially limits several major life

4

activities including his ability to maintain relationships with others, sleep regulation, his ability to work, and his ability to think clearly.  Despite mitigation of his symptoms with several medications and other coping mechanisms such as living an extremely regimented lifestyle, doing the same tasks at the same time each day, Plaintiff still experiences breakthrough symptoms and panic attacks.  Plaintiff relies on his service dog, a malamute huskie named "Harley" to assist him with certain tasks related to his disability including alerting him of the onset of agitation and early panic attack symptoms, providing deep pressure therapy, and creating a barrier between Plaintiff and other people. Harley was professionally trained by several different trainers with significant assistance from Plaintiff. Plaintiff and Harley have been working together for over six years. Plaintiff and Harley reinforce their training together daily.  Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

11.     Defendant FENOZ LLC dba BIG PINES MOUNTAIN HOUSE OF TAHOE, is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business located at 4083 Cedar Ave, South Lake Tahoe, California, known as the Big Pines Mountain House.

12.      The Big Pines Mountain House is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of the categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

13.     **FACTUAL STATEMENT:**  Plaintiff Josh Richey has been working with his service dog Harley for more than six years.  Harley is a malamute huskie who was both professionally trained and individually trained to be a service dog.  Plaintiff has also trained and continues to train Harley to serve his specific needs throughout their relationship through a series of commands and gestures.  Harley is specifically trained to assist Plaintiff by alerting him of the onset of agitation/mania and early panic attack symptoms, providing deep pressure therapy, and creating a barrier between Plaintiff and other people. Harley was professionally trained by several different trainers with significant assistance from Plaintiff.

14.     Harley is trained to do several tasks he would not otherwise know but for his training.  For example, Harley is trained to interrupt/alert Plaintiff of behaviors such as eye twitching, hitting his temple with his hand, rocking, and humming which indicate the onset of a manic episode or panic attack.  Additionally, Harley is trained to provide deep pressure therapy on Plaintiff in a sitting or lying down position. When he requires deep pressure therapy, Plaintiff uses the command "on me" and taps two fingers on his chest.  If Plaintiff is lying down, Harley will lie on top of Plaintiff's chest completely flat and splayed out until Plaintiff releases him.  If Plaintiff is sitting, Harley hooks his head around Josh's neck and goes limp to provide a dead weight and thus the most pressure.  Plaintiff can then slow himself down and relax by focusing on Harley's breathing and weight on top of him.

15.     Harley is a working dog; he is not a pet.  Plaintiff and Harley have trained extensively together, and they supplement that training daily.  Plaintiff takes Harley almost everywhere with him.  It is important they stay together as much as possible because (a) Harley provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions, where Plaintiff goes, Harley goes. Below is a photograph of Harley as he looked on the day of Plaintiff's visit to the Big Pines Mountain House:



COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

16.     Plaintiff is a disabled veteran who uses a service dog to ameliorate his disability. In late February, he planned a trip to Lake Tahoe to go snowboarding with a friend.  Prior to the trip, Plaintiff made a reservation to stay at the Big Pines Mountain House of Tahoe located at 4083 Cedar Ave, South Lake Tahoe, California, for the night of February 29, 2024.  He made the reservation through a third-party travel website.  On February 29, 2024, Plaintiff and his service dog, Harley, drove from his home in the Bay Area to South Lake Tahoe. When Plaintiff arrived at the Big Pines Mountain House, he parked his vehicle and went inside the office to check in. As is his usual practice,  he was accompanied by Harley. Harley was wearing a vest which identified him as a service dog.

17.     Plaintiff approached the check-in area, and he informed Defendant's employee in the office that he had a reservation and would like to check in. Plaintiff has stayed at the Big Pines Mountain House previously, and he recognized the employee at the check-in area as Anna. Defendant's employee informed Plaintiff that the Big Pines Mountain House had a new policy, and he would have to show an ID proving that his dog is in fact a service dog in order to stay at the motel without the need to pay a pet fee.  Plaintiff asked why Defendant had changed their policy.  He explained that he had stayed at the motel many times with Harley without any issue. Defendant's employee reiterated that Defendant had changed their policy and now require all service dog handlers to provide proof that their dog is a service dog.  Plaintiff explained to Defendant's employee that there is no such thing as an ID or paperwork which proves that a dog is a service dog because neither the ADA nor state access laws require such paperwork. Defendant's employee countered that other guests have provided her with an ID or paperwork which show that their dogs are service dogs.  Plaintiff again pushed back on Defendant's employee's request by asking her to explain what "ID" or "paperwork" a service dog handler is required to carry/provide to business according to State or federal law.  Defendant's employee simply reiterated that Defendant requires service dog handlers to provide an ID.

18.     Plaintiff told Defendant's employee that he was not able to provide an ID or "paperwork" proving that Harley is a service dog.  Anna reiterated that it is Defendant's policy that all service dog handlers provide an ID proving that their dogs are service dogs.  Plaintiff then

1    asked Defendant's employee to provide him with information about which organization issues the

2    "ID" certifying service dogs that Defendant must see.  Anna admitted that she did not know what

3    organization certifies service dogs.  Plaintiff then asked Anna to look up the ADA guidelines

4    regarding service dogs and simply follow those guidelines.  Defendant's employee refused to

5    look up the ADA guidelines and instead told Plaintiff that she has been in the hospitality industry

6    for many years and knows what she can and cannot ask for.

7           19.     Plaintiff was becoming frustrated by Defendant's refusal to follow the law, and he

8    requested that Defendant's employee grant him access to his room.  He informed Anna that

9    Defendant was breaking the law by requiring him to show an ID for his service dog.  Defendant's

10   employee then asked Plaintiff if he could show her a note from his doctor identifying his need for

11   a service if he could not show an ID.  Plaintiff informed Defendant's employee that it is contrary

12   to the ADA, and possibly HIPPA, to request a note from his doctor or any of his private medical

13   information. Then, Plaintiff requested that Defendant's employee call the manager or owner of

14   the business to discuss this issue.

15          20.     Defendant's employee called the manager/owner as Plaintiff requested, and she

16   told her boss that Plaintiff refused to provide an ID for his service dog.  Defendant's

17   manager/owner told Anna that she should make a one-time exception to the policy of requiring

18   IDs for service dogs for Plaintiff.  Anna hung up the phone, completed the check-in process with

19   Plaintiff and provided him with the key to his room.

20          21.     Plaintiff left the office and went to his room.  However, Plaintiff was extremely

21   upset by Defendant's illegal change in policy surrounding service dogs and about the interaction

22   with Defendant's employee.  After a few moments in his room, Plaintiff began experiencing

23   symptoms of a panic attack.  Plaintiff decided that the best thing for him was to leave the motel

24   and find another place to stay for the night.

25          22.     Plaintiff went back to the registration office.  He informed Anna that he could not

26   stay at the Big Pines Mountain House due to Defendant's policy regarding service animals and

27   his poor treatment. He requested that she cancel his reservation and refund him the money he had

28   already paid for the room.  Plaintiff told Anna that he could not support a business who did not

8

follow the ADA.  Defendant's employee told Plaintiff that she could not provide him with a refund for the room because he had booked the room through a third-party travel website.

23.     Plaintiff then called Angora, the company that he had booked the room through, on his cellphone from the lobby.  He spoke to an employee of Angora, told them that he needed a refund for his reservation, explained briefly why he needed a refund, and said that the motel was refusing to refund his money because he had booked the room through Angora.  After providing this explanation, the Angora employee told Plaintiff that they would call the Big Pines Mountain House to discuss the situation and try to get Plaintiff's money refunded.  Plaintiff hung up his phone and waited in the office for Defendant's employee to receive the phone call from Angora.

24.     Angora did call the Big Pines Mountain House while Plaintiff was in the lobby, and he overheard the conversation between the Angora representative and Defendant's employee.  Ultimately, the conversation between Angora and Defendant's employee ended with Defendant's employee stating that Defendant does not allow refunds for rooms booked through third-party websites.

25.     By this point Plaintiff was extremely triggered.  He felt himself becoming too agitated, so he removed himself from the office of the Big Pines Mountain House.  He went across the street from the motel, sat on a log, and Harley began to perform deep pressure therapy on him to calm him down.  Plaintiff also called the police, explained the situation, and requested assistance in obtaining a refund from the Big Pines Mountain House.

26.     Plaintiff waited for approximately 20 minutes for the police to arrive.  When they arrived, Plaintiff again explained that he is a disabled veteran who uses a service dog to ameliorate his disability.  He explained that the Big Pines Mountain House violated his civil rights by requiring him to show an ID for his service dog and is now refusing to refund his money.  Plaintiff also explained that he would like the police to take Anna's statement about the incident.  The police officer went inside the motel to speak with Anna while Plaintiff waited on the log across the street with Harley.

27.     The police officer returned after a few minutes.  The police officer informed Plaintiff that they had spoken with Anna.  They said that Anna admitted that she had questioned

Plaintiff about his service dog.   The police officer also told Plaintiff that Anna had admitted that she had asked Plaintiff questions about him and his service dog that she should not have asked. However, the police informed Plaintiff that Defendant's employee continued to refuse to provide Plaintiff with a refund.

28.   Plaintiff ultimately left the Big Pines Mountain House without receiving a refund. He found another accommodation at the 3 Peaks Resort & Beach Club. As planned, one of Plaintiff's friends met him in South Lake Tahoe later that evening.  The two friends planned to go snowboarding together at Heavenly the following day.  Snowboarding is an activity that Plaintiff really enjoys which relaxes and rejuvenates him.  Unfortunately, when Plaintiff left to go snowboarding, he was still ruminating on the incident at the Big Pines Mountain House.  Plaintiff was so distracted by the incident that he forgot to bring his snowboard to the mountain.

29.   Plaintiff had to wait to receive his refund from the third-party he booked the hotel room with, despite the fact that it was Defendant's behavior which forced him to cancel the reservation.

30.   Defendant's intentional policy of unlawfully requiring service dog owners to produce "identification cards" or other unidentified "paperwork" for their service dogs is clearly meant to discourage and deter disabled people who require the assistance of a service dog from staying at its motel.  Alternatively, it does not provide the option not to pay the pet fee when disabled persons who use service dogs have no choice but to be accompanied by their service dogs.  This is unlike pet owners who can choose to bring their pets or not. Further, Defendant's terrible treatment of Plaintiff when he was attempting to assert his civil rights completely ruined his trip.

31.   Plaintiff would have stayed at the Big Pines Mountain House on several occasions but was deterred from doing so due to Defendant's service dog policies and treatment of him. Instead, he stayed at other hotels nearby on February 28, 3 Peaks Resort, 29th – March 8 at 3 Peaks Resort; Econolodge 25-27th March, April 1-3 Econolodge, 7th – 11th at Econolodge, 16th to the 19th at Econolodge.

32.   Plaintiff wishes to return to the Big Pines Mountain House when he takes his next

10

trip to South Lake Tahoe, but he can do so only *after* Defendant has implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to the motel until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq.*)**

33.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 32, above, and incorporates them herein by reference as if separately repled hereafter.

34.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

35.     The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

36.     Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

37.     Big Pines Mountain House is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(A).

38.     The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are

11

necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

39.     Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

40.     Defendant has a policy and practice of requiring guests with service animals to provide registration cards or other paperwork identifying their dogs as service animals at the Big Pines Mountain House. This is contrary to the ADA. This is contrary to the ADA.  The Department of Justice issued guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.  Similarly, the DOJ's FAQs regarding Services Animals mirror these requirements specifically in the hotel context:

> **Q17. Does the ADA require that service animals be certified as service animals**?
>
> A. No. Covered entities may not require documentation, such as proof that the

animal has been certified, trained, or licensed as a service animal, as a condition for entry.

**There are individuals and organizations that sell service animal certification or registration documents online. These documents do not convey any rights under the ADA and the Department of Justice does not recognize them as proof that the dog is a service animal.**

https://www.ada.gov/resources/service-animals-faqs/

41.     On information and belief, as of the date of Plaintiff's most recent visit to the Big Pines Mountain House on or about February 29, 2024, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of Plaintiff's disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

42.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

43.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility are one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes any "hotel, motel or other place of lodging."  42 USC § 12181(7)(A).

13

44.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

45.     The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the

event that removal of any barrier is found to be "not readily achievable," Defendant still violated

the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges,

advantages and accommodations through alternative methods that were "readily achievable."

46.     On information and belief, as of the dates of Plaintiff's encounters at the premises

and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have

denied and continue to deny full and equal access to Plaintiff and to other disabled persons who

work with service dogs, which violates Plaintiff's right to full and equal access and which

discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff

the full and equal enjoyment of the goods, services, facilities, privileges, advantages and

accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

47.     Defendant's actions continue to deny Plaintiff's rights to full and equal access by

deterring Plaintiff from patronizing the Big Pines Mountain House and discriminated and

continue to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying

to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges,

advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

48.     Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,*

Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights

Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of

his disabilities in violation of sections 12182 and 12183.  On information and belief, Defendant

has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full

and equal" access to this public accommodation since on or before Plaintiff's encounters.

Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief
> shall include an order to alter facilities to make such facilities readily accessible to
> and usable by individuals with disabilities to the extent required by this title.  Where
> appropriate, injunctive relief shall also include requiring the provision of an
> auxiliary aid or service, modification of a policy, or provision of alternative
> methods, to the extent required by this title.

49.     Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil

Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to

1  implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person

2  for purposes of § 12188(a) of the ADA who is being subjected to discrimination on the basis of

3  disability in violation of Title III and who has reasonable grounds for believing he will be

4  subjected to such discrimination each time that he may use the property and premises, or attempt

5  to patronize the Big Pines Mountain House, in light of Defendant's policies barriers.

6       WHEREFORE, Plaintiff prays for relief as hereinafter stated.

7                       **SECOND CAUSE OF ACTION:**
   **VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL**
8  **CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES**
   **ACT AS INCORPORATED**
9                    **BY CIVIL CODE SECTION 51(f)**

10      50.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein,

11  the allegations contained in Paragraphs 1 through 49 of this Complaint and incorporates them

12  herein as if separately re-pleaded.

13      51.     At all times relevant to this action, the Unruh Civil Rights Act, California Civil

14  Code § 51(b), provided that:

15      All persons within the jurisdiction of this state are free and equal, and no matter
        what their sex, race, color, religion, ancestry, national origin, disability, or medical
16      condition are entitled to the full and equal accommodations, advantages, facilities,
        privileges, or services in all business establishments of every kind whatsoever.
17

18      52.     California Civil Code section 52 provides that the discrimination by Defendant

19  against Plaintiff on the basis of disability constitutes a violation of the general anti-discrimination

20  provisions of sections 51 and 52.

21      53.     Each of Defendant's discriminatory acts or omissions constitutes a separate and

22  distinct violation of California Civil Code section 52, which provides that:

23      Whoever denies, aids or incites a denial, or makes any discrimination or distinction
        contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the
24      actual damages, and any amount that may be determined by a jury, or a court sitting
        without a jury, up to a maximum of three times the amount of actual damage but in
25      no case less than four thousand dollars ($4,000), and any attorney's fees that may
        be determined by the court in addition thereto, suffered by any person denied the
26      rights provided in Section 51, 51.5, or 51.6.

27      54.     Any violation of the Americans with Disabilities Act of 1990 constitutes a

28  violation of California Civil Code section 51(f), thus independently justifying an award of

damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

55.    The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory and compensatory to Plaintiff, according to proof.

56.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

57.    Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

58.    Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 57 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

17

59.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

60.     Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

61.     Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

62.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

63.     Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

64.     The Big Pines Mountain House is a public accommodation within the meaning of the CDPA.  On information and belief, Defendant is the owner, operator, lessor or lessee of the

1 | public accommodation.

2 |       65.     Defendant made the decision to knowingly and willfully exclude Plaintiff and his

3 | service dog from its public accommodation by requiring unnecessary and unidentified paperwork

4 | for the service dog and thereby deny Plaintiff's his right of entrance into their place of business

5 | with his service dog.  As a result of that decision Plaintiff has faced the continuing discrimination

6 | of being essentially barred from entering this public accommodation and place of business based

7 | upon Defendant's illegal requirement for paperwork for Plaintiff's legally protected use of his

8 | service dog.  Plaintiff has continued to suffer denial of access to these facilities, and he faces the

9 | prospect of unpleasant and discriminatory treatment should he attempt to return to these facilities.

10 | Plaintiff is unable to return to the Big Pines Mountain House until he receives the protection of

11 | this Court's injunctive relief, and he has continued to suffer discrimination on a daily basis since

12 | February 29, 2024, all to his statutory damages pursuant to California Civil Code §§ 54.1, 54.2,

13 | and 54.3 and California Penal Code section 365.5.

14 |       66.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and

15 | omissions of Defendant as complained of herein which are continuing on a day-to-day basis and

16 | which have the effect of wrongfully excluding Plaintiff and other members of the public who are

17 | disabled and who require the assistance of service animals from full and equal access to these

18 | public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional

19 | suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class

20 | citizen and serve to discriminate against him on the sole basis that Plaintiff is a person with

21 | disabilities who requires the assistance of a service animal.

22 |       67.     Plaintiff wishes to return to patronize the Big Pines Mountain House but is

23 | deterred from returning to use these facilities, because the lack of access and the significant

24 | policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and

25 | Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal

26 | access to and use of these public facilities.  Therefore, Plaintiff cannot return to patronize the Big

27 | Pines Mountain House and its facilities and is deterred from further patronage until these facilities

28 | are made properly accessible for disabled persons, including Plaintiff and other disabled

1   individuals who require the assistance of a service animal.

2        68.     The acts of Defendant have proximately caused and will continue to cause

3   irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to

4   Defendant's inaccessible policies.   As to the Defendant that currently owns, operates, and/or

5   leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive

6   relief to enjoin and eliminate the discriminatory practices that deny full and equal access for

7   disabled persons and those associated with them, and seeks an award of reasonable statutory

8   attorney fees, litigation expenses and costs.

9        69.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any

10   continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained

11   of and to require Defendant to comply forthwith with the applicable statutory requirements

12   relating to access for disabled persons.  Such injunctive relief is provided by California Civil

13   Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award

14   damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses,

15   and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5

16   and other law, all as hereinafter prayed for.

17        70.     **DAMAGES:**  As a result of the denial of full and equal access to the described

18   facilities and due to the acts and omissions of Defendant in owning, operating, leasing,

19   constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of

20   his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has

21   suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal

22   injuries, all to his damages per Civil Code section 54.3, including general and statutory damages,

23   as hereinafter stated.  Defendant's actions and omissions to act constitute discrimination against

24   Plaintiff on the basis that he was and is disabled and unable, because of the policy barriers created

25   and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on

26   a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to

27   attempt to patronize the Big Pines Mountain House and will continue to cause him damages each

28   day these barriers to access and policy barriers continue to be present.

71.     Although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for Plaintiff's rights and safety.

72.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

73.     Plaintiff suffered damages as above described as a result of Defendant's violations. Damages are ongoing based on their deterrence from returning to the Big Pines Mountain House.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief he requests.  Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Josh Richey prays for judgment and the following specific relief against Defendant:

1.      An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

    a.  From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b.  To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that his service dog will not be excluded and he will not be required to show any paperwork or registration cards should he desire to enter and use the services of the Big Pines Mountain House;

    c.  That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

    d.  An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2.      An award to Plaintiff of statutory, actual, general, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3.      An award of civil penalty as against Defendant under California Penal Code §

1    365.5(c);

2         4.       An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California

3    Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise

4    permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5         5.       An award of prejudgment interest pursuant to Civil Code § 3291;

6         6.       Interest on monetary awards as permitted by law; and

7         7.       Grant such other and further relief as this Court may deem just and proper.

8    Date: September 19, 2024                    REIN & CLEFTON

9                                                      ___/s/ Aaron M. Clefton___
10                                               By AARON M. CLEFTON, Esq.
                                                 Attorneys for Plaintiff
11                                               JOSH RICHEY

12                              **JURY DEMAND**

13        Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

14   Date: September 19, 2024                    REIN & CLEFTON

15                                                    ___/s/ Aaron M. Clefton___
16                                               By AARON M. CLEFTON, Esq.
                                                 Attorneys for Plaintiff
17                                               JOSH RICHEY

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES